## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAVID ROBERT BENTZ,**<br>**#S03210,** | |
| **Plaintiff,** | |
| | **Case No. 19-cv-00799-SPM** |
| **v.** | |
| **ERIN MEARS,**<br>**SUSAN KIRK,**<br>**HEATHER MCGEE,**<br>**J. LASHBROOK,**<br>**ALEX JONES,**<br>**BILL WESTFALL,**<br>**MAJOR CLAY,**<br>**FRANK EOVALDI,**<br>**MAJOR ROWELN,**<br>**WILLIAM SPILLER,**<br>**KENT BROOKMAN,**<br>**LIEUTENANT WHITEHOP,**<br>**DONALD LINDENBERG,**<br>**T. JONES,**<br>**JASON WALLER,**<br>**MCGALLER,**<br>**WILLIAMS,**<br>**HAIL,**<br>**WILLIAMSON,**<br>**RICKERSON,**<br>**LESSING,**<br>**DERICK,**<br>**DERRICK THREADGILL,**<br>**FRITCH,**<br>**CLUTTS,**<br>**B. MILES,**<br>**JASON HART,**<br>**JOHN HOOD,**<br>**BRANT,**<br>**MCCLELLAN,**<br>**CHITTY,**<br>**I. WILLIAMS,**<br>**GATZ,**<br>**ALPH,**<br>**ROBERT,**<br>**BROOKS,** | |

**SHEMEDY,**
**WALKER,**
**DUMPSTER,**
**GRIFFIN,**
**HANSON,**
**HECHT,**
**TAYLOR,**
**MCGABLER,**
**TYSON,**
**SIDIQUI,**
**PATRICIA STEWART,**
**MENARD CORRECTIONAL CENTER,**
**ILLINOIS DEPARTMENT OF**
**CORRECTIONS,**
**UNIDENTIFIED JOHN/JANE DOES et**
**al., and**
**JOHN/JANE DOES 1-47.**

                    **Defendants.**

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

      This case was commenced by *pro se* Plaintiff David Bentz, an inmate of the Illinois

Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center

("Menard"), for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. The Court

dismissed the original Complaint pursuant to Rule 8 of the Federal Rules of Civil Procedure. (Doc.

15). The Complaint was 95 pages against 93 defendants, which included a 30-page and 165-

paragraph statement of claim, a 4-page request for relief, and nearly 60 pages of exhibits. The

Court also found that the Complaint violated the rules of joinder by combining several unrelated

grievances against different groups of defendants in a single document. *See* FED. R. CIV. P. 18-21.

Bentz was granted leave to amend in order to cure these deficiencies. Bentz then filed a First

Amended Complaint, which was also dismissed pursuant to Rule 8. (Doc. 23). Although the First

Amended Complaint was significantly shorter, Bentz still brought his allegations against 96

defendants, 47 of which were unidentified staff at Menard. A number of his claims were conclusory legal statements, several were brought against a large group of individuals generally, and some allegations were against all the defendants collectively. He failed to describe how each individual was personally involved in the alleged constitutional violation. Bentz also brought claims against individuals not listed as Defendants, wrote some names twice in the case caption, and some names were referenced using alternate spellings. Accordingly, the Court found that the First Amended Complaint lacked sufficient detail to put each individual defendant on notice of the claims alleged. Bentz was granted leave to file a Second Amended Complaint.

The Second Amended Complaint is now before the Court for review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Court must also consider whether any claims are improperly joined and subject to severance or dismissal. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

### THE SECOND AMENDED COMPLAINT

Bentz alleges the following: On March 30, 2018, he was seen in nurse sick call by Nurse Mears for chronic neck pain and swelling. (Doc. 22, p. 10). During the appointment, Mears disclosed Bentz's private medical issues to Correctional Officer Waller. She also told Bentz she would not do anything for him for "personal reasons." Mears instructed Waller to issue Bentz a false disciplinary ticket in retaliation for Bentz filing lawsuits and grievances against Menard staff. Waller issued Bentz a disciplinary ticket for intimidation or threats, and Bentz was moved from

general population to solitary punitive segregation. (*Id.* at p. 11). At segregation intake, he asked Nurse Kirk for medical care for his chronic pain, but Kirk refused to do anything for him. (*Id.*).

On April 3, 2018, Bentz went before the Adjustment Committee consisting of members Brookman, Hart, and Walker. (*Id.*). Bentz requested that the Adjustment Committee members Brookman and Hart recuse themselves on the basis of bias because he is suing them in another civil lawsuit, but his request was denied. At the hearing, Bentz was not allowed to enter a plea, make a statement of his version of the events, or call witnesses. (*Id.* at p. 11-12). The Adjustment Committee also did not produce evidence against Bentz, such as statements or incident reports, meet the required standard of review of burden of proof necessary to find him guilty, or provide Bentz with a written statement stating the reasons for the disciplinary action. (*Id.* at p. 12). The Adjustment Committee recommended that Bentz received one month C-grade status, one month segregation, and one month of commissary restrictions. (*Id.*). Contrary to state regulations, Bentz received additional sanctions not recommended by the Adjustment Committee imposed by Warden Lashbrook — seven days of excessive C-grade status, one month of excessive B-grade status, "pink tag," an increase in aggression level, and one month of loss state idle pay. (*Id.* at pp. 13, 17).

Between March 30, 2018, and April 30, 2018, Bentz was placed in punitive segregation in unconstitutional conditions. (*Id.* at p. 13-15). He was housed in dirty cells with toilets that leaked, feces and mold all over the floors and walls, lights left on all of the time, and lack of ventilation. There was no running water to wash his hands. His mattresses had mold and mildew, and he was not given a pillow. He was denied hygiene items, cleaning supplies, a change of clothes, exercise, showers, writing supplies, access to the law library, and adequate meals. (*Id.*). During this period, he was also denied medical care for a skin rash and back and neck pain. He was sick for weeks. (*Id.* at p. 14).

On June 13, 2018, Bentz saw Dr. Sidiqui and requested medical care for his aggravated

Page 4 of 24

injuries. (*Id.* at p. 17). Dr. Sidiqui refused to do anything for him because he was not seeing Bentz for issues with his neck, teeth, left finger, right hand, skin rash, and chronic pain. (*Id.*).

### PRELIMINARY DISMISSALS

In addition to listing forty-seven unidentified John/Jane Doe Defendants, Bentz identifies a group of defendants as "unidentified John/Jane Does, et al." (Doc. 28, p. 5). While a plaintiff may use the "John Doe" designation to refer to specific individuals whose names are unknown, a plaintiff will run afoul of the pleading standards in *Iqbal* and *Twombly* by merely asserting that a group of Menard correctional officers and staff has violated his constitutional rights. *See* FED. R. CIV. P. 8(a)(2); *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, vague references to a group or list of defendants, without specific allegations tying the individual defendants to the alleged unconstitutional conduct, do not raise a genuine issue of material fact with respect to those defendants. *See Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) (finding dismissal of named defendant proper where plaintiff failed to allege defendant's personal involvement in the alleged wrongdoings); *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996). Accordingly, "unidentified John/Jane Does, et al." and any claims against them are dismissed without prejudice as defendants.

Similarly, Bentz makes several general assertions against large groups of Defendants. He claims that over seventy of the listed defendants (1) denied him medical care, including mental health care; (2) intentionally inflicted emotional distress by causing him to suffer from sleep deprivation, chronic depression, high anxiety, and high stress; and (3) ignored his unconstitutional conditions of confinement. (Doc. 28, pp. 18, 21, 17-18, 21). He also states that all Defendants,

over one hundred individuals, (1) denied him equal protection of the law; (2) deprived him of the right to access the law library and legal storage; (3) denied him adequate living conditions and medical care; and (4) retaliated against him. (*Id.* at pp. 18, 22). Bentz offers only conclusory statements to support these claims, which is legally insufficient. *See Walton v. Walker,* 364 F. App'x 256, 258 (7th Cir. 2010); *Brooks,* 578 F.3d at 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). Accordingly, these claims are dismissed without prejudice. Furthermore, because Defendants Lessing and John Doe 15, John Doe 16, John Doe 17, John Doe 18, and John/Jane Doe 19 are included in these general allegations (Doc. 28, p. 21), and there are no further assertions describing their personal involvement, they will be dismissed.

The Court also dismisses Bentz's claims that Westfall, Clay, Eovaldi, and Roweln violated his constitutional rights by condoning the issuance of the false disciplinary ticket and failing to address his conditions of confinement. (Doc. 28, pp. 2, 16, 20). Bentz alleges that Westfall, Clay, Eovaldi, and Roweln, who are majors at Menard, knew the disciplinary ticket was issued in retaliation and that he was held in unconstitutional conditions but violated their supervisory responsibilities by failing to take action. Conclusory statements that an individual was aware of a problem and failed to act, without any factual support or content, is insufficient to state a claim. *Brooks*, 578 F.3d at 581 (7th Cir. 2009) (abstract recitations of the elements of a cause of action or conclusory legal statements are insufficient to state a claim); *Pepper v. Vill. of Oak Park*, 430 F.3d 806, 810 (7th Cir. 2005)("[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation."); *Twombly*, 550 U.S. at 570 (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face."). Additionally, Westfall, Clay, Eovaldi, and Roweln cannot be held liable based solely on their positions as majors because the doctrine of *respondeat superior* does

not apply to Section 1983 actions. *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir. 2001). Accordingly, these claims are dismissed as to Westfall, Clay, Eovaldi, and Roweln.

Bentz names Menard Correctional Center and/or the Illinois Department of Corrections as defendants. Both entities, however, are not subject to suit under Section 1983 and are dismissed. *Owens v. Godinez*, 860 F.3d 434, 438 (7th Cir. 2017); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

Finally, Bentz states that he is bringing claims under the Fifth Amendment, "which protects a prisoner's right to deprivation of property such as religious freedom, or access to courts, and can constitute cruel and unusual punishment, and is not a procedure due process claim or issue." (Doc. 28, p. 10). Because he offers no additional facts to support these claims, they are dismissed.

## DISCUSSION

Based on the allegations in the Second Amended Complaint, the Court finds it convenient to designate the following Counts:

**Count 1:**    First Amendment claim against Mears for disclosing Bentz's medical information in violation of the Health Insurance Portability and Accountability Act.

**Count 2:**    Eighth Amendment claim against Mears for denying Bentz medical care on March 30, 2018.

**Count 3:**    First Amendment claim against Mears and Waller for issuing Bentz a false disciplinary ticket in retaliation for filing grievances and lawsuits.

**Count 4:**    First Amendment claim against Brookman, Hart, and Walker for finding Bentz guilty following the disciplinary hearing in retaliation for filing grievances and lawsuits.

**Count 5:**    First Amendment claim of retaliation against Shemedy, Lindenberg, and John Doe 40 for refusing to feed Bentz lunch on April 6, 2018, in retaliation for filing grievances and lawsuits.

**Count 6:**   Fourteenth Amendment procedural due process claim against Mears and Waller for issuing Bentz a false disciplinary ticket.

**Count 7:**   Fourteenth Amendment claim against Brookman, Hart, and Walker for denying Bentz due process by not recusing themselves and improper procedure during the disciplinary hearing on April 3, 2018.

**Count 8:**   Fourteenth Amendment claim against Lashbrook and Alex Jones for denying Bentz due process by implementing excessive discipline and punishment that were not recommended by the Adjustment Committee.

**Count 9:**   Eighth Amendment claim against Lashbrook and Alex Jones for implementing a policy of excessive discipline resulting in cruel and unusual punishment.

**Count 10:**   Eighth Amendment claim of cruel and unusual punishment against Eovaldi, Spiller, Whitehop, Lindenberg, T. Jones, Miles, McGaller, Williams, Rickerson, Derick, Fritch, Clutts, Williamson, Hood, Brant, McClellan, Chitty, I. Williams, Gatz, Alph, Robert, Brooks, Shemedy, Dumpster, Griffin, Hecht, Taylor, Hail, McGabler, Tyson, John Doe 8, John Doe 10, John Doe 11, John Doe 12, John Doe 13, John Doe 14, John Doe 25, Jane Doe 26, John Doe 27, John Doe 28, John Doe 29, John Doe 30, John Doe 31, John Doe 33, John Doe 35, John Doe 36, John Doe 37, John Doe 40, John Doe 41, John Doe 42, John Doe 43, John Doe 44, John Doe 46, John Doe 47, Lashbrook, Alex Jones, Brookman, Hart, and Walker for housing Bentz in unconstitutional conditions of confinement from March 30, 2018, until April 14, 2018, while he was in segregation.

**Count 11:**   Eighth Amendment claim of cruel and unusual punishment against Threadgill, T. Jones, Hanson, Griffin, Lindenberg, John Doe 38, John Doe 47, Rickerson, Taylor, John Doe 14, John Doe 28, and John Doe 33 for housing Bentz in unconstitutional conditions of confinement from April 14, 2018, until April 30, 2018, while he was in segregation.

**Count 12:**   False imprisonment claim in violation of Illinois state law against Mears, Waller, Brookman, Hart, and Walker.

**Count 13:**   Assault claim in violation of Illinois state law against Lindenberg for threatening to beat Bentz on April 3, 2018.

**Count 14:**   Negligence claim in violation of Illinois state law against Mears, Eovaldi, Spiller, Whitehop, Lindenberg, T. Jones, Miles, McGaller, Williams, Rickerson, Derick, Fritch, Clutts, Williamson, Hood,

Brant, McClellan, Chitty, I. Williams, Gatz, Alph, Robert, Brooks, Shemedy, Dumpster, Griffin, Hecht, Taylor, Hail, McGabler, Tyson, Lashbrook, Alex Jones, Brookman, Hart, Walker, Threadgill, Hanson, John Doe 8, John Doe 10, John Doe 11, John Doe 12, John Doe 13, John Doe 14, John Doe 24, John Doe 25, Jane Doe 26, John Doe 27, John Doe 28, John Doe 29, John Doe 30, John Doe 31, John Doe 33, John Doe 35, John Doe 36, John Doe 37, John Doe 38, John Doe 40, John Doe 41, John Doe 42, John Doe 43, John Doe 44, John Doe 46, John Doe 47, Westfall, Clay, and Roweln.

**Count 15:**    Eighth Amendment claim against Kirk for refusing to provide medical treatment to Bentz on March 30, 2018.

**Count 16:**    Eighth Amendment claim against McGee, Lindenberg, Jane Doe 1, John/Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, Jane Doe 7, John Doe 8, Jane Doe 9, Jane Doe 32, Jane Doe 34, Jane Doe 39, Jane Doe 45, and John Doe 47 for failing to provide Bentz medical treatment from March 30, 2018, through April 30, 2018.

**Count 17:**    Negligence claim in violation of Illinois state law against McGee, Lindenberg, Jane Doe 1, John/Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, Jane Doe 7, John Doe 8, Jane Doe 9, Jane Doe 32, Jane Doe 34, Jane Doe 39, Jane Doe 45, and John Doe 47 for failing to provide medical treatment from March 30, 2018, through April 30, 2018.

**Count 18:**    Eighth Amendment claim against Sidiqui for denying Bentz medical care on June 13, 2018.

**Count 19:**    Negligence claim in violation of Illinois state law against Sidiqui for denying Bentz medical care on June 13, 2018.

**Count 20:**    First Amendment claim of denial of access to courts against Stewart, John/Jane Doe 20, John/Jane Doe 21, John/Jane Doe 22, and John/Jane Doe 23 for denying Bentz access to his legal storage, legal documents, or the law library from March 30, 2018, through April 30, 2018.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any claim that is mentioned in the Second**

Amended Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.

SEVERANCE

Rule 18 and Rule 20 of the Federal Rules of Civil Procedure "work together to allow joinder of multiple claims by [a plaintiff] against multiple defendants." *UWM Student Assoc. v. Lovell,* 888 F. 3d 854, 863 (7th Cir. 2018). Specifically, Rule 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences *and* presents a question of law or fact common to all. *George,* 507 F.3d at 607 (emphasis added); 3A MOORE'S FEDERAL PRACTICE § 20.06, at 2036–45 (2d ed. 1978). Rule 18 allows a party to join unrelated claims against defendants in a lawsuit. However, this rule applies only after the requirements for joinder of parties have been satisfied under Rule 20. *Intercon Research Assn., Ltd. v. Dresser Ind., Inc*., 696 F.2d 53, 57 (7th Cir. 1983) (citing 7 Charles Alan Wright et al., *Federal Practice & Procedure*). Thus, the "core group" of allowable defendants must be determined under Rule 20 before a plaintiff may join additional unrelated claims against one or more of those defendants under Rule 18.

Even, if these provisions are satisfied with respect to the joinder of Defendants, the Court has discretion to require the claims to proceed separately if joinder would cause "prejudice, expense, or delay." *See Chavez*, 251 F.3d at 632 (district courts are given "wide discretion ... concerning the joinder of parties") (citing *Intercon Research Assoc., Ltd. v. Dresser Indus., Inc*., 696 F.2d 53, 56 (7th Cir. 1982)); FED. R. CIV. P. 20(b). "This discretion allows a trial court to

---

[1]*Twombly,* 550 U.S. at 570 (2007).

Page 10 of 24

consider, in addition to the requirements of Rule 20, 'other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness.'" *Chavez*, 251 F.3d at 632 (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)).

Here, while Bentz describes a series of events that all occurred from March through April 2018, while he was housed in segregation, the claims alleged involve distinct groups of defendants with very little overlap. Nineteen defendants are named in connection with his claims regarding failure to treat a serious medical need, Defendants Kirk, Sidiqui, Mears, McGee, Lindenberg, John/Jane Does 1-9, 32, 34, 39, 45, and 47, and only Defendants Mears, Lindenberg, John Doe 8, and John Doe 47 are also involved in Bentz's second set of claims regarding a false disciplinary ticket and retaliation resulting in unconstitutional conditions of confinement asserted against more than sixty Defendants. He also brings a third set of claims regarding denial of access to the courts against another set of defendants, Stewart, John/Jane Doe 20, John/Jane Doe 21, John/Jane Doe 22, and John/Jane Doe 23. The fact that the events all occurred after he was issued a false disciplinary ticket and placed in segregation does not convince the Court that the claims are a part of the same "series of acts or transactions" and belong in the same lawsuit. *See United States v. Cavale,* 688 F. 2d 1098, 1106 (7th Cir. 1982) ("Case law reveals that 'the word transaction contemplates a series of many acts depending not so much upon immediateness of their connection as upon their logical relationship.'") (quoting *United States v. Isaacs*, 493 F.2d 1124, 1158 (7th Cir.)).

To the extent it could be argued that Defendants are properly joined, the Court finds that the inclusion of all claims against these parties would run afoul of the Seventh Circuits admonition that "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). With the

exception of Mears, Lindenberg, John Doe 8, and John Doe 47, the Defendants who are involved in the claims regarding not receiving adequate medical treatment and denial of access to the courts have nothing to do with Bentz's claims regarding the false disciplinary ticket and resulting constitutional violations. Defendants would likely be prejudiced if all of the claims are allowed to proceed together. *See Lovell,* 888 F.3d at 863 (under Rule 20 a court may deny joinder if the additional party results in prejudice, expense, or delay).

For these reasons, Counts 1-14 shall remain in this action, and the merits of these claims will be reviewed. The Court will allow all claims against Mears to be joined together under Rule 18, as the alleged constitutional violations began with Bentz's appointment with her in nurse sick call. Counts 15-19 and Count 20, however, shall be severed into two separate actions.

## MERIT REVIEW OF COUNTS 1-14

### Count 1

Bentz alleges that Mears violated the Health Insurance Portability and Accountability Act ("HIPAA"), other medical privacy laws, and the First Amendment by disclosing his medical information to Waller, who is not a member of medical staff. (Doc. 28, pp. 10, 18).

The Seventh Circuit has held that "HIPAA does not furnish a private right of action." *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011) (citing *Acara v. Banks*, 470 F.3d 569, 570-72 (5th Cir. 2006)). Consequently, Bentz cannot bring a claim for the alleged HIPAA violation.

Bentz also claims that Mears disclosed medical information in "violation of [his] First Amendment Right." (Doc. 28, p. 18). To the extent Bentz is arguing a privacy right under the Fourth Amendment, this claim will also be dismissed. The Seventh Circuit has not recognized a constitutional privacy right for prisoners in their medical information. *See Franklin v.*

Page 12 of 24

*McCaughtry,* 110 F. App'x 715, 718-19 (7th Cir. 2004). *See also Anderson v. Romero,* 72 F.3d 518, 522-23 (7th Cir. 1995) (holding that a claim by a state prisoner against a guard who revealed that the prisoner had HIV did not support a Fourth Amendment claim). In *Franklin,* the Seventh Circuit noted that some circuits have acknowledged such a right, but those cases involved "the purposeful dissemination of intensely private medical information about the complaining inmates," not the disclosure of "non-sensitive information to other officials within a prison." *See Dougherty v. Lakin,* No. 15-cv-00396-MJR, 2015 WL 5321786, at *4 (S.D. Ill., Sept. 11, 2015). The Seventh Circuit found that the "semi-public discussion" of the plaintiff's "cancerous finger sore, diabetes, the need for eyeglasses, and other fairly pedestrian maladies" did not "transgress the constitutional right to information privacy insofar as that right might extend to prisoners." *Franklin,* 110 F. App'x at 719. Likewise, here, the Court does not find that Bentz has stated a constitutional claim under the Fourth Amendment by alleging that Mears shared information with another staff member regarding Bentz's chronic neck pain and requests for pain medication and x-rays, and Count 1 will be dismissed.

## Count 2

To prevail on a claim of deliberate indifference to a serious medical need under the Eighth Amendment, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (citations and quotation marks omitted).

It is not entirely clear at this point whether Bentz suffered from a serious medical condition, but construing the complaint liberally, Court finds that Count 2 will proceed against Mears for denying Bentz medical treatment for his chronic neck pain on March 30, 2018. (Doc. 28, p. 10). *See Gonzalez v. Feinerman,* 663 F. 3d 311 (7th Cir. 2011) (finding that the plaintiff's chronic pain presented a separate objectively serious condition).

Page 13 of 24

### Counts 3-5

To state a claim for retaliation under the First Amendment, a plaintiff must allege that a "prison official retaliated against him for exercising a constitutionally protected right." *Pearson v. Welborn,* 471 F.3d 732, 738 (7th Cir. 2006). *See also Antoine v. Ramos*, 497 F. App'x 631, 634 (7th Cir. 2012).

Bentz alleges that because he filed grievances and lawsuits: (1) Mears and Waller issued Bentz a false disciplinary ticket (Doc. 28, p. 10); (2) Brookman, Hart, and Walker found Bentz guilty of the charges on the disciplinary ticket (*Id.* at pp. 11); and (3) Shemedy, Lindenberg, and John Doe 40 refused to feed him lunch on April 6, 2018 (*Id.* at p. 16). These claims are enough to state a First Amendment claim and Counts 3, 4, and 5 survive preliminary review against Mears, Waller, Brookman, Hart, Walker, Shemedy, Lindenberg, and John Doe 40.

### Counts 6 and 7

Standing alone, the receipt of a false disciplinary ticket does not give rise to a due process violation. This is because "due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses[,] [and a] hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report." *Hadley v. Peters,* 841 F. Supp. 850, 856 (C.D. Ill. 1994), *aff'd*, 70 F.3d 117 (7th Cir. 1995) (citations omitted). Due process safeguards that are associated with prison disciplinary hearings include advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the resulting discipline. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). The imposition of discipline following a hearing must also be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994); *see also Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir.

2007).

Even when a plaintiff alleges that his due process rights were violated, he must first show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A court reviewing a due process claim must, therefore, engage in a two part inquiry: (1) was there a protected interest at stake that necessitated the protections demanded by due process; and (2) was the disciplinary hearing process conducted in accordance with procedural due process requirements?

Bentz alleges that (1) Mears and Waller wrote a false disciplinary ticket; and (2) Brookman, Hart, and Walker disregarded constitutionally required procedures while conducting the disciplinary hearing (Doc. 28, pp. 10-12, 18-19). As a result of Defendants' actions, he remained in segregation until April 30, 2018. Bentz's allegations regarding the conditions of his confinement while in segregation amount to an "atypical and significant hardship" that could implicate a liberty interest protected by the due process clause. *Sandin v. Conner,* 515 U.S. 472, 484 (1995). Additionally, his claims that his due process rights were violated because he was issued a false disciplinary ticket relied upon at the disciplinary hearing, the members of the Adjustment Committee were not impartial, he was not allowed to give his version of events or call witnesses, the Adjustment Committee allowed false evidence to be produced, the required burden of proof was not met in finding his guilt, and the Adjustment Committee did not provide Bentz a written statement regarding the evidence they used in reaching a determination or copies of evidence, such as the relevant incident report. These issues implicate a violation of the *Wolff* requirements, and, therefore, Counts 6 and 7 will proceed.

### Counts 8 and 9

Bentz claims that Wardens Lashbrook and Alex Jones implemented policies that imposed excessive disciplinary sanctions beyond their authority. (Doc. 28, pp. 13, 17, 20). Following the

Page 15 of 24

implementation of the sanctions recommended by the Adjustment Committee, Bentz remained C-grade status for an additional seven days beyond the Adjustment Committee's recommendation and then changed to a B-grade status for a month. He also received a loss of one month state idle pay, a "pink tag," and an increase in aggression level that was not imposed or recommended by the Adjustment Committee. He claims that these actions amounted to excessive punishment and violate IDOC policies, which provide that the chief administrative officer shall not increase the sanctions recommended by the Adjustment Committee. (*Id.*). *See* 20 ILL. ADMIN. CODE tit. 20, § 504.80(q)(2).

It must be pointed out that "[n]ot every action that carries with it negative consequences creates a liberty interest for inmates." *Waldron v. Gaetz,* No. 11-cv-242-JPG, 2011 WL 2518782, at *5 (S.D. Ill. June 23, 2011) (citing *Moody v. Daggett,* 429 U.S. 78, 86-88 (1976)). A prisoner does not have a liberty interest in receiving idle pay or in prisoner classification and so, procedural due process is not required prior to the implementation of those punishments. *See Beatty v. DeBruyn,* No. 94-3241, 1996 WL 80168, at *1 (7th Cir. Feb. 21, 1996) (stating that prison officials "can certainly deny prisoners pay for doing nothing."); *Thomas v. Ramos,* 130 F. 3d 754, 762 n.8 (7th Cir. 1997) (there is no protected liberty interest implicated in demotion to C-grade status or loss of certain privileges); *Waldron,* 2011 WL 2518782, at *5 (a prisoner did not state a due process claim when his aggression classification level changed without warning and without merit); *DeTomaso v. McGinnis,* 970 F.2d 211, 212 (7th Cir. 1992) (prisoners do not have a liberty interest in their classifications and prison assignments). Accordingly, Bentz's claims that the modifications to his grade status, aggression level, denial of idle pay, and restrictions on other privileges amounted to excessive discipline do not state a constitutional claim under the Due Process Clause.

Furthermore, Bentz has not stated how the change in his grade status and aggression level and denial of privileges resulted in the deprivation of the "minimal civilized measure of life's

necessities." *See Rhodes v. Chapman,* 452 U.S. 337, 346-47 (1981). Therefore, his claim that Defendants violated the Eighth Amendment by imposing additional restrictions also fails.

Finally, violations of IDOC policies are not cognizable under Section 1983. *See James v. Pfister*, 708 F. App'x 876, 879 (7th Cir. 2017). For these reasons, Counts 8 and 9 are dismissed.

### Counts 10 and 11

Eighth Amendment protections extend to conditions of confinement that pose a substantial risk of serious harm to a prisoner's health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Not all prison conditions, however, amount to an Eighth Amendment violation. *See Jaros v. Ill. Dep't of Corr.* 684 F.3d 667, 670 (7th Cir. 2012). Only deprivations of basic human needs like food, medical care, sanitation, and physical safety will trigger Eighth Amendment scrutiny. *Rhodes,* 52 U.S. at 346.

Bentz claims that from March 30, 2018, until April 30, 2018, he was housed in unsanitary and hazardous conditions and when he informed Defendants of his cell conditions, they refused to do anything to address the conditions or move him to a different cell. (Doc. 28, pp. 13-15, 16). More specifically, he also claims that Defendants Rickerson, Taylor, John Doe 14, John Doe 28, and John Doe 33 denied him showers during this time and Shemedy, Lindenberg, and John Doe 40 denied him a meal. (*Id.* at p. 21). This is sufficient for Counts 10 and 11 to survive screening.

### Count 12[2]

Under Illinois state law, false imprisonment is the unreasonable restraint of an individual's liberty, against his will, caused or procured by the defendant. *Poris v. Lake Holiday Prop. Owners Ass'n*, 983 N.E. 2d 993, 1007 (Ill. 2013).

Bentz claims that he was falsely imprisoned in by Mears, Waller, Brookman, Hart, and

---

[2] Bentz's state law claims in Counts 12, 13, and 14 concern the same facts as his Section 1983 claims, so supplemental jurisdiction is appropriate. *See* 28 U.S.C. 1367(a); *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).

Walker, when he was placed in segregation as a result of the issuance of disciplinary ticket and guilty verdict without reasonable grounds. (Doc. 28, pp. 13, 19). As this district has previously acknowledged, there is doubt as to "whether a prisoner sentenced to segregation can assert a false imprisonment claim under Illinois law." *Bentz v. Allsup,* No. 19-cv-00770-NJR, 2020 WL 3316005, at *6 (S.D. Ill. June 18, 2020) (quoting *Lear v. Pfister,* No. 17-cv-1173-JBM, 2018 WL 10096601, at *2 (C.D. Ill. Feb. 1, 2018). *See also Suarez v. Harrington,* No. 15-cv-00637-NJR, 2015 WL 4127181, at *2 (S.D. Ill. July 8, 2015); *Leslie v. Doyle,* 125 F.3d 1132, 1135 (7th Cir. 1997). *But see Goings v. Jones,* No. 16-CV-00833-NJR-DGW, 2018 WL 2099877, at *5 (S.D. Ill. May 7, 2018) (dismissing plaintiff's false imprisonment claim because his "period in segregation was not unlawful, at least not in the sense that he was imprisoned against his will as required to meet the elements of the common law tort."). At this stage, however, the Court will allow Bentz to proceed with his claim.

## Count 13

In discussing the Illinois law of assault, the Seventh Circuit has stated that "threat and assault are not synonyms in the law." *Merheb v. Ill. State Toll Highway Authority,* 267 F.3d 710 (7th Cir. 2001). Civil assault involves "(1) a threatening gesture, or an otherwise innocent gesture made threatening by the accompanying words, that (2) creates a reasonable apprehension of an *imminent* battery." *Kijonka v. Seitzinger,* 363 F.3d 645, 647 (7th Cir. 2004). "A merely verbal threat of indefinite action in the indefinite future is not an assault." *Id.*

Bentz alleges that on April 3, 2018, he informed Lindenberg about his poor cell conditions, and Lindenberg responded by threatening to "beat this Plaintiff's ass" if he kept complaining. (Doc. 28, pp. 16, 21). This is not enough to state a claim of assault. First, the threat was not accompanied by any kind of physical gesture. Second, Bentz has not alleged that he had a reasonable fear of "imminent peril." *See Santiago v. Patel,* No. 2015 WL 6756286, at *3 (N.D. Ill.

Page 18 of 24

Nov. 5, 2015) (dismissing a claim of assault pursuant to Federal Rule 12(b)(6) where the defendant threatened "to comeback with my uncle and cousins"). Lindenberg's threat of physical harm was not immediate, but a possibility, conditioned on Bentz continuing to complain. It also appears that Bentz did not have a reasonable fear of harm, immediate or impending, because after receiving the threat he continued to complain about his cell conditions to Lindenberg. (*See* Doc. 28, p. 15). Accordingly, Count 13 is dismissed.

### Count 14

In Illinois, in order to state a claim for negligence, a complaint must allege facts to establish that the defendant owed the plaintiff a duty of care, breached that duty, and that the breach was the proximate cause of the plaintiff's injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011) (citing *Iseberg v. Gross*, 879 N.E.2d 278 (2007)).

Other than stating that Defendants "were negligent," Bentz provides no further explanation of this claim. (Doc. 28, p. 20). As been discussed, conclusory statements, such as those pertaining to negligence, do not meet the pleading standards set forth in *Twombly* and Federal Rule of Civil Procedure 8. *See Twombly*, 550 U.S. at 555; *Brooks,* 578 F.3d at 581 (the court is not required to accept as true "legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."). Accordingly, Count 14 shall be dismissed without prejudice.

### PRELIMINARY INJUNCTION

Within the request for relief, Bentz asks the Court to issue a preliminary injunction ordering the warden of Menard to expunge his disciplinary record of the conviction described in the Complaint, prohibit Brookman, Hart, and Walker from participating in any future disciplinary hearings involving him, and stop imposing disciplinary sanctions not recommended by the Adjustment Committee. (Doc. 28, p. 26-27). Not only has Bentz not filed a separate motion for his

preliminary injunction pursuant to Federal Rules of Civil Procedure 7 and 65, but he has failed to demonstrate any of the elements required for obtaining a preliminary injunction. *See Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008) (citations omitted). His request for a preliminary injunction is denied.

### OFFICIAL CAPACITY CLAIMS AND IDENTIFICATION OF UNKNOWN DEFENDANTS

Bentz brings his claims against Defendants in their individual and official capacities. State officials named in their official capacities may not be sued for monetary damages in federal court, and the most appropriate government official responsible for ensuring that injunctive relief is carried out is the acting warden. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7thCir. 2011). Therefore, the official capacity claims are dismissed and Anthony Wills, the Warden of Menard, will be added as a defendant in his official capacity only for the purpose of implementing any injunctive relief that maybe ordered and responding to discovery aimed at identifying the unknown defendant.

### DISPOSITION

### *Preliminary Dismissals*

**IT IS HEREBY ORDERED** that, for the reasons stated above, Defendants Unidentified John/Jane Does, et al., Lessing, Menard Correctional Center, Illinois Department of Corrections, John Doe 15, John Doe 16, John Doe 17, John Doe 18, and John/Jane Doe 19 are **DISMISSED,** and the Clerk of Court is **DIRECTED** to **TERMINATE** them from the docket.

### *Severance*

**IT IS FURTHER ORDERD ORDERED** that **COUNTS 15-20** are **SEVERED** into two new case as follows:

| | |
|---|---|
| **First Severed Case:** | Counts 15, 16, 17, 18, and 19 against Defendants Kirk, McGee, Lindenberg, Jane Doe 1, John/Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, Jane Doe 7, John Doe 8, Jane Doe 9, Jane Doe 32, Jane Doe 34, Jane Doe 39, Jane Doe 45, and John Doe 47. |
| **Second Severed Case:** | Count 20 against Stewart, John/Jane Doe 20, John/Jane Doe 21, John/Jane Doe 22, and John/Jane Doe 23. |

In each new case, the Clerk is **DIRECTED** to file the following documents:

(1)    The Second Amended Complaint (28);
(2)    Motion for Leave to Proceed *in forma pauperis* (Doc. 2); and
(3)    This Memorandum and Order.

**IT IS FURTHER ORDERED** that the <u>**only claims remaining in this action, are COUNTS 1-14 against Mears, Waller, Brookman, Hart, Walker, Lashbrook, Alex Jones, Eovaldi, Spiller, Whitehop, Lindenberg, T. Jones, Miles, McGaller, Williams, Rickerson, Derick, Fritch, Clutts, Williamson, Hood, Brant, McClellan, Chitty, I. Williams, Gatz, Alph, Robert, Brooks, Shemedy, Dumpster, Griffin, Hecht, Taylor, Hail, McGabler, Tyson, Hanson, Threadgill, Westfall, Clay, Rowein, John Doe 8, John Doe 10, John Doe 11, John Doe 12, John Doe 13, John Doe 14, John Doe 24, John Doe 25, Jane Doe 26, John Doe 27, John Doe 28, John Doe 29, John Doe 30, John Doe 31, John Doe 33, John Doe 35, John Doe 36, John Doe 37, John Doe 38, John Doe 40, John Doe 41, John Doe 42, John Doe 43, John Doe 44, John Doe 46, and John Doe 47**</u>. The Clerk of the Court is **DIRECTED** to **TERMINATE Kirk, McGee, Stewart, Sidiqui, Jane Doe 1, John/Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, Jane Doe 7, Jane Doe 9, John/Jane Doe 20, John/Jane Doe 21, John/Jane Doe 22, John/Jane Doe 23, Jane Doe 32, Jane Doe 34, Jane Doe 39,** and **Jane Doe 45** as defendants in this action.

*Merits Review Counts 1-14*

**IT IS HEREBY ORDERED** that the Second Amended Complaint, which includes Counts 1-14, survives merit review pursuant to Section 1915A. **COUNT 2** will proceed against Mears. **COUNT 3** will proceed against Mears and Waller. **COUNT 4** will proceed against Brookman, Hart, and Walker. **COUNT 5** will proceed against Shemedy, Lindenberg, and John Doe 40. **COUNT 6** will proceed against Mears and Waller. **COUNT 7** will proceed against Brookman, Hart, and Walker. **COUNT 10** will proceed against Eovaldi, Spiller, Whitehop, Lindenberg, T. Jones, Miles, McGaller, Williams, Rickerson, Derick, Fritch, Clutts, Williamson, Hood, Brant, McClellan, Chitty, I. Williams, Gatz, Alph, Robert, Brooks, Shemedy, Dumpster, Griffin, Hecht, Taylor, Hail, McGabler, Tyson, John Doe 8, John Doe 10, John Doe 11, John Doe 12, John Doe 13, John Doe 14, John Doe 25, Jane Doe 26, John Doe 27, John Doe 28, John Doe 29, John Doe 30, John Doe 31, John Doe 33, John Doe 35, John Doe 36, John Doe 37, John Doe 40, John Doe 41, John Doe 42, John Doe 43, John Doe 44, John Doe 46, John Doe 47, Lashbrook, Alex Jones, Brookman, Hart, and Walker. **COUNT 11** will proceed against Threadgill, T. Jones, Hanson, Griffin, Lindenberg, John Doe 38, John Doe 47, Rickerson, Taylor, John Doe 14, John Doe 28, and John Doe 33. **COUNT 12** will proceed against Mears, Waller, Brookman, Hart, and Walker. **COUNTS 1, 8, 9, 13** and **14** are **DISMISSED without prejudice**. Because there are no further claims remaining against them, Westfall, Clay, and Roweln are **DISMISSED without prejudice**.

The Clerk of Court is **DIRECTED** to **ADD Anthony Wills** as a defendant, in his official capacity only for the purposes of implementing injunctive relief and identifying the John Doe Defendants.

The Clerk of Court shall prepare for **Mears, Waller, Brookman, Hart, Walker, Shemedy, Lindenberg, Eovaldi, Spiller, Whitehop, T. Jones, Miles, McGaller, Williams, Rickerson, Derick, Fritch, Clutts, Williamson, Hood, Brant, McClellan, Chitty, I. Williams,**

**Gatz, Alph, Robert, Brooks, Dumpster, Griffin, Hecht, Taylor, Hail, McGabler, Tyson, Lashbrook, Alex Jones, Threadgill, Hanson, John/Jane Doe Defendants** (once identified), and **Anthony Wills** (official capacity only):   (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Bentz. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the unknown defendants until such time as Bentz has identified him or her by name in a properly filed motion for substitution. Bentz is **ADVISED** that it is his responsibility to provide the Court with the name and service addresses for these individuals.

**Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

**IT IS FURTHER ORDERED** that if judgment is rendered against Bentz, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Bentz is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a

delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

      **IT IS SO ORDERED.**

      **DATED:   October 22, 2020**

                                  *s/Stephen P. McGlynn*
                                  **STEPHEN P. MCGLYNN**
                                  **United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.